**PARKS, Admrx. v DUNLAP**

Ohio Appeals, 2nd Dist, Preble Co.

No. 99.   Decided Dec. 8, 1939.

James Howsare, Eaton; Orel J. Myers, Dayton, for plaintiff.

John V. Dye, Eaton; Matthews & Matthews, Dayton, for defendant.

## OPINION

By GEIGER, J.

This cause comes before us on appeal from a final judgment in the Court of Common Pleas. The cause was originally tried in the court below in March, 1936, and the first trial resulted in a verdict in favor of the administratrix, Gertrude Parks, for $7250.00. A motion for new trial was filed and overruled.

At a subsequent term of court, the defendant filed a petition in the Court of Common Pleas seeking to set aside the judgment in the original case upon the ground of newly discovered evidence.

The cause was heard upon the petition of the plaintiff there for a new trial and it was found that the plaintiff was entitled to a new trial, on the ground of newly discovered evidence, and it was ordered that the judgment rendered in the original action of the Aministratrix, Gertrude Parks v Lester Dunlap be set aside.

At a later date, July 23, 1937, the cause was again tried and the verdict was returned in favor of the defendant, Lester Dunlap. A motion for new trial was filed by the plaintiff. The Court had under advisement this motion for a considerable period. On April 15, 1939, the motion of the plaintiff for new trial was overruled as to all branches thereof save the sixth, as to which the Court found that said motion is well taken in that the Court erred to the prejudice of the plaintiff in its general charge to the jury in the particulars enumerated in the entry. The Court found that the errors set out are those of commission and that by reason thereof the verdict of the jury should be set aside and the plaintiff granted a new trial.

To this order and judgment of the Court, notice of appeal was given by defendant and the case lodged in this Court.

The action was based upon alleged negligence of the defendant, Lester Dunlap on account of which the plaintiff's decedent, Morris Parks was killed in an automobile collision between the car driven by Morris Parks and that driven by Lester Dunlap. The facts are, briefly, that Lester Dunlap, at the time of the injury complained of, was returning from Eaton, in Preble County, Ohio, to his home in the country, on an east and west road known as Concord Road. The collision occurred where such road was crossed by another road known as Winters Road, upon which the decedent was, at the time of the accident, driving his car in a northerly direction. At the time of the collision there was growing on the south side of the Concord Road, beginning at a point approximately 117 feet east of the intersection, a hedge fence, the limbs from which extended from the south side of the road and obstructed the view of the driver, to some extent, on each of the intersecting roads.

The defendant was approaching the intersection from the east, from the right of Morris Parks. Evidence was introduced tending to show that Parks stopped his car for the purpose of looking for oncoming cars on the Concord Road, where he had a vision eastward of 250 feet or more and that at such time the Dunlap car had not come within sight. Parks then proceeded to

cross Concord Road. There is evidence as to the speed at which the Dunlap car approached from the east and that Dunlap did not see the Parks' car until his own came in contact with it, just before the rear wheel of that car had entered the north traveled track of the Concord Road; that the car of the defendant struck that of the decedent with considerable force throwing the decedent out of the car and against a telephone pole, which by the impact was broken off, the decedent being instantly killed. Certain skid marks in the road were described in the testimony which indicated that the brakes had not been applied on the Dunlap car until the impact. The Dunlap car, after striking decedent's car, proceeded westward on the Concord Road for a distance of approximately 85 feet. Evidence was introduced to show that Parks, on approaching the Concord Road from the south, had stopped his car about 16 feet south of the intersection. There was a stop sign on the Winters Road, but none on the Concord Road. The traveled portion of the Winters Road was about ten feet in width and that of the Concord Road about seventeen feet. Evidence was adduced tending to show that when Dunlap had proceeded past the west end of the hedge growing on the south side of Concord Road, he observed decedent's car proceeding northwardly on the Winters Road and that he, Dunlap, continued westwardly expecting decedent's car to stop and when he reached a point about 90 feet west of the end of the hedge, he saw that the decedent did not intend to stop and he applied his brakes and turned to his left to avoid the collision, his car at that time being at a point about 35 feet east of the center of the Winter's Road. Dunlap first noticed that the decedent did not intend to stop after the decedent's car hesitated near the intersection and then passed into the intersection at a speed of about 20 miles an hour. The evidence tended to show that Parks had a view eastwardly on Concord Road of more than 350 feet.

The issues made by the pleadings and evidence adduced by plaintiff were that the defendant was operating his car at an excessive speed and failed to stop or abate his speed after he had seen, or should have seen the automobile driven by Parks; that the defendant failed to keep his automobile under control or to keep a lookout for the positions of vehicles at the intersection. On the other hand, it is alleged that the collision was due to the negligence of the decedent in that he failed to look and to see the defendant's automobile before he attempted to cross the Concord Road, when defendant's car was in his plain view and approaching from his right, and in failing to bring his automobile to a stop before entering said intersection.

The errors assigned are (1) that the Court erred in failing to direct a verdict for the appellant (defendant below) at the close of the plaintiff's evidence and at the close of all the evidence (2) that the Court erred in granting a new trial in that it abused its discretion in so doing, and ruling that it did err to the prejudice of the appellee (plaintiff below) in the particulars set out in the final entry granting the motion for new trial (3) that the court abused its discretion in finding that the alleged errors are errors of commission.

## THE LAW

At the time of the second trial, the defendant, at the end of the plaintiff's testimony and on the completion of all the testimony, interposed a motion for directed verdict, which was overruled and the questions before us are whether or not the Court erred in overruling such motion and whether or not the Court abused his discretion in granting the motion for new trial for the reasons by him stated.

A defendant whose motion for directed verdict has been overruled and who claims that he is entitled to judgment as a matter of law, has a right, if the legal question has been decided against him, to submit his cause to a

jury, and has the right to have the action of the Court, in overruling his motion, reviewed by this Court even though there was a verdict by the jury which may or may not have been set aside by the Court.

The position of the appellant is not exactly but nearly like that of the appellant in the case of Coal Association v Nigh, Admr., 131 Oh St 405. In that case there were proper motions for a directed verdict on behalf of the defendant, which were overruled and a verdict returned in favor of plaintiff and thereafter the Court granted the defendant a new trial, at which time the defendant moved for judgment in its favor, which motion was overruled.

In the case at bar the motion was made by the defendant for an instructed verdict and the same was overruled and the jury returned a verdict in favor of the defendant instead of in favor of the plaintiff, as in the Coal Company case, but in each case the Court granted a motion for new trial and in each error is prosecuted from the judgment of the Court overruling the motion for instructed verdict.

Judge Jones in delivering the opinion of the Court in **Coal Company v Nigh, 131 Oh St 405, at p. 410,** states that the defendant may contend that he is entitled to a judgment and if he fails in that contention he still has "an anchor to the windward; he has two strings to his bow". If the legal question has been decided against him, he has the right to submit his case to the jury, notwithstanding the adverse ruling of the Court.

In the case at bar the defendant, having moved for an instructed verdict and such motion having been overruled, may now present that ruling as an assignment of error. This motion for an instructed verdict requires an examination of the evidence to determine whether or not reasonable minds might arrive at different conclusions. In the case at bar there is the usual conflict of testimony, a clear cut controversy as to which of the two drivers was responsible for the accident, whether the defendant was guilty of negligence or the plaintiff's decedent guilty of contributory negligence which might prevent his recovery. These issues were hotly contested by each side and it must be conceded that different reasonable minds might arrive at different conclusions, in which event it is within the province of the jury to determine the questions at issue and it would have been reversible error for the Court to invade that province. **Theater Company v Lautermilch, 118 Oh St 167.**

The most recently reported case touching upon this question is that of **MacClanahan v Koviak, et, Oh Bar, December 4, 1939, 62 Oh Ap 307.** The Court there states the matter in this language:

"3. In passing upon a motion for an instructed verdict it is the duty of the trial court to overrule it if, construing the evidence most favorably to the plaintiff, reasonable minds could reach different conclusions, and it is the duty of the Court of Appeals, in reviewing the action of the trial court in this respect, to observe the same rule."

We hold that the trial court was not in error in overruling the motions of the defendant for an instructed verdict. This disposes of one of the "strings to the defendant's bow".

We now examine as to the efficiency of the remaining string to the defendant's bow. The case of **Hoffman, et v Knollman et, 135 Oh St 170,** establishes the law in the second syllabus:

"2. An order of a trial court setting aside a general verdict of a jury and granting a new trial is not a final determination of the rights of the parties and is not, therefore, a judgment or final order reviewable by the Court of Appeals, **unless it clearly appears that the trial court has abused its discretion in granting such order.**"

Pursuing the simile suggested by Judge Jones, this decision renders inefficacious the second string to the bow, unless it will still carry the shaft

fashioned by the holding of the Court, "unless it clearly appears that the trial court has abused its discretion in granting such order".

This Court in the case of **State v Wright, 59 Oh Ap 191,** held:

"To constitute an abuse of discretion, it must apppear that the judgment of the Court is not justified and is clearly against reason and evidence and is not merely error of judgment, but a discretion exercised to an end or purpose not justified and plainly appearing to effect an injustice."

The transcript of the journal entries sets out at large five errors in the charge of the Court which the trial court holds were prejudicial and errors of commission. We are not concerned as to whether the Court was right or wrong in setting aside the verdict for the reasons given. We are only concerned with whether or not the Court, in arriving at its conclusion, exercised a proper judicial discretion or abused that discretion. A Court in its judgment may be unquestionably wrong or it may exercise its judgment in determining questions which have but a narrow margin between right and wrong. Yet, if the Court in doing either is within the proper exercise of judicial discretion and discrimination, it can not be said that it "clearly" appears that it "has abused its discretion in granting the order".

Without attempting to pass upon the correctness of the reasons given by the Court, we are clearly of the opinion that the issues of law and fact called for the exercise of proper judicial discretion, which the Court did not abuse.

We have been very much interested in an article prepared by the students of the Western Reserve Law School, submitted by John Roland Baskin, under the general topic, "Granting Motion of New Trial as Final Order When Court Abused Its Discretion". This article appears in the December 4, 1939 Edition of the Ohio Law Reporter, Page 596. We have read it with great interest and with complete sympathy for

the analysis and conclusions arrived at, and commend it as an illuminating discussion of this troublesome question. The essayist arrives at the conclusion, as stated on page 601:

"The abuse of discretion rule is based on dictum; that it is, therefore questionable whether it can be said to be a binding rule of law; that it arose out of a confusion by the courts of the distinction between error and jurisdiction; that it is contrary to the settled interpretation of the provisions of **Art. IV, Sec. 6, Constitution of Ohio,** and of §12223-2, GC, and that it can not logically be maintained together with the well established rule that the granting of a motion for a new trial is not a final order within the meaning of the Constitution and statute."

We, therefore, arrive at the conclusion that there being no abuse of discretion, the order of the Court setting aside the verdict was not a final order from which the defendant has a constitutional right to appeal.

So the second string to the bow fails.

Having thus found against the appellant on both assignments of error, the judgment will be affirmed and the cause remanded to the Court of Common Pleas for further appropriate proceedings.

We find in this case an excellent occasion to state the views of the Court on error proceedings.

We have been presented with a separate paper upon which appear the docket and journal entries made by the court below and accompanying this, in loose and detached form, are all the papers filed in that court.

**Sec. 12223-8, GC** providing for the preparation of the transcript of the docket and journal entries, provides, in substance, that the clerk shall, upon being paid the lawful fees **and the filing of a praecipe therefor** prepare and file in the court to which the appeal is taken a transcript of the docket and journal entries, with such original pa-

pers or transcripts thereof **as are necessary** to exhibit the error complained of.

While this section provides for the action of the clerk, yet it is apparent that the attorney has an active part in such preparation in that he must file a praecipe. This praecipe should not include an indiscriminate order to the clerk to file all the papers, but only such original papers or transcripts thereof **as are necessary** to exhibit the error complained of, which requires a careful selection by the attorney.

While the statute does not provide in what manner these papers shall be filed, Rule III of this Court of Appeals provides that,

"All pleadings originally filed in the Common Pleas Court when filed in this Court shall be arranged in the order of their filing, unfolded and attached together with temporary or looseleaf covers."

We have found it very advantageous to attach these papers to a reasonably firm back with a bristol or press board cover, fastened together with tape. The matters that should be included are the pleadings consisting of the petition, answer, reply and any cross-petitions that are pertinent to the issue. There should also be filed with the original papers, within the same cover, the verdict of the jury and the notice of appeal. These should be filed flat with the file mark of the Court of Appeals upon their face. There should also be included in the filing of original papers the original entries of the court affecting any matter brought up for review together with any opinions of the court on matters sought to be reviewed with proper file marks. It would be of assistance if the Court of Appeals' stamp be of different shape and the ink used of a different color from those used in the Court of Common Pleas so that the Court of Appeals' files may be readily detected.

It is proper to state that most clerks of our several counties follow this formula, but some do not and we trust that this matter may be corrected in the future. While it is a clerical matter, it is under the statute not without the supervision of the attorneys seeking a review.

BARNES, J., concurs.
HORNBECK, PJ., concurs in judgment.